**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HYKEIM DORSEY-GRIFFIN | : | |
| | : | |
| Appellant | : | No. 1871 EDA 2018 |

Appeal from the Judgment of Sentence Entered June 7, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002417-2017

BEFORE:   SHOGAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:                      **FILED JULY 7, 2020**

Hykeim Dorsey-Griffin (Appellant) appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following his negotiated guilty plea to third-degree murder and persons not to possess firearms.[1]  Appellant avers he did not enter his guilty plea voluntarily.  We affirm.

The trial court summarized the Commonwealth's presentation of the facts and procedural history as follows.  On October 12, 2016, around 7:30 p.m., Saleem Brown (Decedent) and Nyseem Dorsey-Griffin (Appellant's Brother) engaged in a verbal altercation regarding the sale of narcotics near

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S §§ 2502(c), 6105(a)(1).

the corner of Bristol and Franklin Streets in the Hunting Park section of Philadelphia. N.T. Guilty Plea, 5/14/18, at 27-28. The altercation, which included shoving, was captured on video. Appellant and two other men, who subsequently gave statements to Philadelphia Police Detectives, observed the altercation. The argument ceased and all individuals left the scene. *Id.* at 28-29.

At approximately 9:40 p.m., video surveillance showed Appellant and Joel Medina approach the area of 4248 North Franklin Street, where Decedent and three individuals were sitting on a front step. N.T., Guilty Plea, at 29-30. They engaged in "pleasant conversation" and there was no argument or fighting. *Id.* at 30. After a few minutes, Appellant turned to Decedent "and said something to the effect of, 'This is for my brother,' or, 'You can't eff with — F-U-C-K —with my brother.'" *Id.* Appellant, who was within three feet of Decedent, revealed a firearm and fired 12 shots at Decedent. Decedent was hit 11 times, including in the head. *Id.* at 31. Appellant and Medina then walked away.

Medina, who initially approached the group with Appellant, as well as one of the men on the front steps gave statements to Philadelphia Police detectives and identified Appellant as the shooter. N.T., Guilty Plea, at 35-36. After the shooting, Medina asked Appellant why he shot Decedent, to which Appellant replied, "fuck him." *Id.* at 36. The Philadelphia Medical Examiner's Officer determined Decedent died from multiple gunshot wounds

and the manner of death was homicide. The Philadelphia Firearms Identification Unit examined ballistic evidence recovered from the crime scene and determined that all twelve fired cartridge casings, as well as projectiles and fragments taken from Decedent's body, were fired from the same gun. *Id.* at 32-33.

On January 8, 2017 Appellant was charged with murder and related offenses. On May 14, 2018, Appellant entered into a negotiated guilty plea to third-degree murder and persons not to possess firearms.[2] During this guilty plea hearing Appellant and the trial court had the following exchange:

The Court: . . . Do you want to plead guilty?

[Appellant:] It doesn't even matter.

The Court: No. It matters. It really does. If you don't want to plead guilty, I'm not going to take your guilty plea obviously. All right?

[Appellant]: Yeah.

The Court: What is the "yeah" about?

[Appellant]: It's a yeah.

The Court: To which one?

[Appellant]: Pleading guilty.

The Court: Which question? Do you want to plead guilty?

[Appellant]: Yeah.

The Court: Okay. Because you can go on with your jury trial.

---

[2] All other charges were *nolle prossed* as a result of the negotiated guilty plea.

Do you understand that?

[Appellant]: Yeah.

\* \* \*

The Court: The agreed to sentence in this case is a total of 25 to 50 years. And the way it's going to be split up is you will receive 20 to 40 years on the third-degree murder conviction, then five to ten years to run consecutively on the Violation of the Uniform Firearms Act conviction. So "consecutively" means that the five starts after the 20 ends, so that brings it to a total of 25 to 50 years.

Do you understand that?

[Appellant]: Yeah.

N.T., Guilty Plea, at 21-22, 26.

On June 7, 2018, the trial court conducted a sentencing hearing. At the beginning of the hearing, Appellant stated he "took the [plea] deal under duress." N.T. Sentencing, 6/7/18, at 5. When the court asked what the duress was, Appellant stated, "It's a couple different things." *Id.* at 6. The trial court advised Appellant, "You don't have to plead guilty under duress," and that he could file a motion to withdraw his plea, which the court would consider against any response by the Commonwealth. *Id.* at 6-7. The following exchange occurred:

The Court: Okay. I mean, do you want to file a petition to withdraw your guilty plea?

[Appellant:] We can move forward.

The Court: With your sentencing?

- 4 -

[Appellant:] Uh-huh. Yes

The Court: Are you sure about that? Because you really can have a jury trial. And it's not a trick. This is not a trick question.

[Appellant:] **No. I know. I understand.**

The Court: You can have a waiver trial, if they agree. That means I hear the case. You can have a jury trial. Your right is actually to have a jury trial. You can just say, No, Judge. I want my jury trial. And I don't have a problem with that.

[Appellant:] We can move forward with sentencing

*Id.* at 8-9 (emphasis added).

The trial court then imposed the negotiated sentence of 20 to 40 years' incarceration for third-degree murder, and a consecutive 5 to 10 years' incarceration for the firearms charge, for an aggregate term of 25 to 50 years' incarceration. Appellant did not file any post-sentence motions.

On June 15, 2018, Appellant filed a *pro se* notice of appeal followed by a counseled notice of appeal on June 29, 2018.[3] Appellant's counsel, George Yacoubian, Esquire (Trial Counsel), then filed, in the trial court, a motion to withdraw from representation on July 12, 2018. The trial court informed Trial

_____

[3] Although Appellant was represented by counsel, the court clerk properly docketed his *pro se* notice of appeal. **See** Pa.R.Crim.P. 576(A)(4) (if represented criminal defendant submits for filing a notice of appeal that has not been signed by his attorney, the clerk of courts shall accept it for filing, and a copy of the time-stamped document shall be forwarded to defendant's attorney and Commonwealth within 10 days); **Commonwealth v. Wooden**, 215 A.3d 997, 1000 (Pa. Super. 2019) (although defendant's attorney remained as counsel of record, it was proper for trial court clerk to docket defendant's *pro se* notice of appeal).

Counsel that it no longer had jurisdiction over the matter and he must contact this Court. The trial court also notified counsel that it intended to file a Pa.R.A.P. 1925(b) order, which it subsequently did on July 13, 2018, with a deadline of August 13, 2018.

Trial Counsel filed a motion, in this Court, to withdraw as counsel on August 18, 2018. This Court denied that motion on September 10th without prejudice to allow him to file a petition to withdraw and brief in compliance with **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

On October 3, 2018, the trial court filed an opinion, stating Trial Counsel had failed to file any Pa.R.A.P. 1925(b) statement, and thus Appellant's appellate issues should be deemed waived pursuant to **Commonwealth v. Lord**, 719 A.2d 306 (Pa. 1998).

On November 7, 2018, Trial Counsel filed another petition, in this Court, to withdraw from representation, which this Court granted on December 10th. That same day, this Court remanded the case for the appointment of new counsel. Present counsel, James Berardinelli, Esquire, was appointed, and on February 21, 2019, he filed a Rule 1925(b) statement on Appellant's behalf. On April 15, 2019, upon motion by Appellant, this Court again remanded this case, directing the trial court to file a supplemental opinion. The trial court has complied.

Appellant presents one issue for our review.

- 6 -

> Did the lower court err in accepting [Appellant's] guilty plea in light of his obvious reluctance to do so?

Appellant's Brief at 3. Appellant avers he entered into his negotiated guilty plea involuntarily and unknowingly. Appellant claims the following exchange, during his plea colloquy, demonstrates his equivocation about entering into the guilty plea:

> [Appellant:] Oh, I got a choice now?
>
> The Court: You always have a choice. I mean, are you satisfied with [Trial Counsel's] advice regarding your guilty plea?
>
> [Appellant:] No. But it really don't matter.
>
> The Court: Well, you don't have to plead guilty. You can go to trial. You always have a choice about trial.
>
> [Appellant:] I asked you for a lawyer and that didn't help. It doesn't matter. Let's just get it over with.
>
> The Court: Yeah. I know. You asked me for a lawyer. We talked about it —
>
> [Appellant:] That's all.
>
> The Court: — right? Last time. And I told you, no. You've got to go along with this lawyer and work with him and then you didn't. Remember that?
>
> Do you want to plead guilty?
>
> [Appellant:] It doesn't even matter.

Appellant's Brief at 6 *citing* N.T., Guilty Plea, at 21-22. Appellant contends that because his plea was not voluntary, the trial court erred by accepting it and he must be awarded a new trial. We conclude this issue is waived.

Pennsylvania Rule of Appellate Procedure 302(a) states, "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). In order to preserve an issue regarding the voluntariness of a guilty plea, a defendant must either "object[ ] at the sentence colloquy or otherwise raise[ ] the issue at the sentencing hearing or through a post-sentence motion." *Commonwealth v. Monjaras-Amaya*, 163 A.3d 466, 468-69 (Pa. Super. 2017).

Here, at the sentencing hearing, Appellant made a bald claim that he pleaded guilty under duress. *See* N.T., Sentencing, at 6 (Appellant responding, "It's a couple different things," when trial court asked, "So what was the duress that caused you to take the deal[?]"). When the trial court advised him he could file a motion to withdraw his plea, however, Appellant stated, "We can move forward" with sentencing. *Id.* at 8. Appellant did not preserve his issue because he did not object at any time during the sentencing hearing nor did he file a post-sentence motion. *See Monjaras-Amaya*, 163 A.3d at 468-69. Appellant's issue cannot be raised for the first time on appeal, thus his issue is waived. *See* Pa.R.A.P. 302(a).

Moreover, even if Appellant had properly preserved his issue for appeal, he would be entitled no relief.

This Court has stated:

Our law is clear that, to be valid, a guilty plea must be knowingly, voluntarily and intelligently entered. There is no absolute right to withdraw a guilty plea, and the decision as to whether to allow a defendant to do so is a matter within the sound discretion of the

trial court. To withdraw a plea after sentencing, a defendant must make a showing of prejudice amounting to "manifest injustice." "A plea rises to the level of manifest injustice when it was entered into involuntarily, unknowingly, or unintelligently." . . .

*Commonwealth v. Pollard*, 832 A.2d 517, 522 (Pa. Super. 2003) (citations omitted). Additionally, "the desire of an accused to benefit from a plea bargain is a strong indicator of the voluntariness of his plea." *Id.* at 524.

> In order for a guilty plea to be constitutionally valid, the guilty plea colloquy must affirmatively show that the defendant understood what the plea connoted and its consequences. This determination is to be made by examining the totality of the circumstances surrounding the entry of the plea. [A] plea of guilty will not be deemed invalid if the circumstances surrounding the entry of the plea disclose that the defendant had a full understanding of the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea.

> "Our law presumes that a defendant who enters a guilty plea was aware of what he was doing. He bears the burden of proving otherwise." "[W]here the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established." Thus,

>> [a] court accepting a defendant's guilty plea is required to conduct an on-the-record inquiry during the plea colloquy. The colloquy must inquire into the following areas:

>> (1) Does the defendant understand the nature of the charges to which he or she is pleading guilty or *nolo contendere*?

>> (2) Is there a factual basis for the plea?

>> (3) Does the defendant understand that he or she has the right to trial by jury?

- 9 -

(4) Does the defendant understand that he or she is presumed innocent until found guilty?

(5) Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?

(6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

*Commonwealth v. Rush*, 909 A.2d 805, 808-09 (Pa. Super. 2006) (citations omitted).

Here, during the guilty plea hearing, the trial court thoroughly questioned whether, despite his alleged "duress," Appellant wished to plead guilty, to which he responded, "Yeah." N.T., Guilty Plea, at 22. The trial court also advised Appellant of the proposed sentencing terms of his plea deal, and Appellant responded that he understood his sentence. *Id.* at 26. Further, Appellant signed a written guilty plea colloquy form addressing the six points described in *Rush*. *See Rush*, 909 A.2d at 808-09; *see also* Written Guilty Plea Colloquy, 5/14/18, at 1-2.

During the sentencing hearing, the trial court again inquired of Appellant whether he wished to petition to withdraw his guilty plea. Appellant responded, "No. I know. I understand." N.T., Sentencing, at 9. Thus, Appellant entered into his negotiated guilty plea voluntarily. Appellant has neither provided evidence nor made a showing of manifest injustice. *See Pollard*, 832 A.2d at 522.

The trial court further reasoned:

- 10 -

[Appellant] also received the benefit of the bargain, in that, in exchange for pleading guilty to third-degree murder, the Commonwealth did not charge [Appellant] with first-degree murder and pursue a life-sentence for [Appellant].  Evidence was presented by the Commonwealth which indicated [Decedent] and [Appellant's] younger brother got into a verbal altercation over drug territory.  Approximately two hours after the argument ended, [Appellant] approached the area where [Decedent] was sitting, yelled, "this is for my brother," drew a 9-millimeter semiautomatic handgun and began firing.  [Appellant] fired a total of [12] times, striking [Decedent] 11 times.  The totality of the evidence strongly corroborates the specific intent to kill needed to prove first-degree murder.  [Appellant] plead guilty to third-degree murder and removed himself from the very real possibility of a life sentence.

Supplemental Trial Ct. Op., 5/13/19, at 8-9; *see also Pollard* 832 A.2d at 524.  Thus, Appellant would not be entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/07/2020